Desiree WHEELER, by and through Limited Co–Conservators, Sandy WHEELER and Rob Wheeler, Plaintiff–Respondent,

v.

Michael L. PHENIX, Defendant,

and

City of West Plains, Missouri, Defendant–Appellant.

No. SD 30371.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 8, 2011.

---

506

Warren E. Harris, Springfield, MO, for Appellant.

H. Lynn Henry, West Plains, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

The City of West Plains, Missouri ("Appellant"), appeals from a judgment entered against it in the amount of $162,500 following a two-day jury trial. We affirm the judgment of the trial court.

## Factual and Procedural Background

On April 11, 2006, Desiree Wheeler ("Respondent") was a passenger in a vehicle being driven by Frances Ness ("Ness") in the city limits of West Plains, Missouri. The Ness vehicle was eastbound on Highway 160 approaching the intersection of Highway 63 and attempting a left turn onto Highway 63 North—from the outside left turn lane—when the collision occurred. The traffic light for Ness was green. Michael Phenix ("Phenix"),[1] a firefighter for Appellant, was driving his personal vehicle southbound on Highway 63 with an activated flashing blue light—roof-mounted system—along with an activated siren. He was en route to a bomb threat at the Royal Oak charcoal plant in Howell County. He approached the intersection and stopped to check traffic before he proceeded because his light was red. To his right, there was a tractor-trailer in the inside left turn lane of Highway 160, which partially obscured his vision. He proceeded slowly past the tractor-trailer. Richard Hammon, a passenger in Phenix's vehicle, no-

---

1. Michael Phenix is not a party to this appeal. The trial court entered judgment in favor of Phenix on Respondent's claim against him. No issues were raised concerning potential inconsistency of the verdict returned in favor of Phenix but against his employer. No complaints were made when the verdict was returned, in the motion for new trial, or on appeal. Indeed, the verdict for Phenix was practically assured by a verdict director which read:

> Your verdict must be for Defendant Michael Phenix if you believe he was responding to an emergency.

> As used in this instruction, "emergency" means an unforeseen combination of circumstances that calls for immediate action without time for full deliberation.

This instruction and a verdict form comprised the instruction package on the claim against Phenix. Jurors were not instructed on how they could find *for* the plaintiff and *against* Phenix, even if they wanted to do so. No one complains, in this appeal, about these instructions.

ticed the Ness vehicle approaching from the right in the outside turn lane next to the tractor-trailer. There was no indication that Ness heard Phenix's siren or saw his blue light. She proceeded at a continuous rate of speed and hit the side of Phenix's vehicle as he moved through the intersection, against the red light for his direction.

Respondent was injured and the total charges for her medical treatment were $55,088.34. At the time of the collision, she was eligible for Medicare and her healthcare providers were reimbursed by Medicare for $20,543.10, in accordance with the contract rate at that time.

On May 16, 2006, Respondent filed suit for personal injury against Phenix. Respondent contended Phenix was negligent for proceeding against a red light at the intersection when this collision occurred. Phenix asserted as an affirmative defense that he was permitted to proceed against the red light because he was operating an authorized emergency vehicle and was en route to an emergency.

On October 5, 2006, Respondent filed a first amended petition naming Appellant as an additional defendant on a theory it was vicariously liable for Phenix's negligence.

On October 23, 2006, Appellant filed a third-party petition versus Ness. Before trial, Appellant reached a settlement with Ness in the amount of $12,500.

On October 29, 2009, Respondent filed a second amended petition substituting her limited co-conservators as plaintiffs.

Before trial, Respondent and Phenix each filed motions for the court to assess the value of medical services. In October 2009, Respondent filed nine affidavits, pursuant to section 490.525,[2] in which respective healthcare providers' custodians of record stated the amount charged by each office was necessary and reasonable and included an itemized statement of charges.

On October 30, 2009, at a pre-trial conference—by agreement of the parties—the trial court heard evidence concerning the issue of the reasonable value of Respondent's medical treatment, including five witnesses employed by Respondent's healthcare providers who were subpoenaed to testify by Appellant. Appellant argued the trial court had the authority to determine the reasonable value of the medical services. The trial court found the reasonable value of the medical services to be $55,088.34. At trial, the parties agreed the medical bills in that amount would go into evidence subject to Appellant's objection that there was not sufficient evidence to rebut the presumption created in section 490.715.

On Saturday, November 7, 2009—two days before trial—Respondent's attorney faxed to Appellant's attorney a motion for leave to file a third amended petition and a proposed third amended petition. The proposed third amended petition[3] added negligence allegations that Phenix violated city ordinances—"Code of Ordinances, City of West Plains, Missouri (2009)"—("city ordinance" or "city ordinances"). Specifically, the proposed amendments alleged Phenix, while facing a steady red signal, failed to stop before entering the intersection in violation of city ordinance Sec. 90–410(a)(3)a,[4] and failed to obey the

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

3. The third amended petition omitted two allegations, which had been included in the second amended petition that Phenix drove at an excessive rate of speed and he failed to

stop his vehicle at a clearly marked stop line, in violation of section 304.301.1(1).

4. WEST PLAINS, MO., CODE OF ORDINANCES, art. VII, Sec. 90–410(a)(3)a. provides in part:
Vehicular traffic facing a steady red signal alone shall stop before entering the cross-

instructions of the traffic control device in violation of city ordinance Sec. 90–407.[5]

On November 9, 2009, the case was called for trial. The trial court sustained Respondent's motion for leave to file the third amended petition, and the third amended petition was filed. While there may have been objections asserted by Appellant as to these amendments off the record, nothing in the record indicates objections to the motion, or a request for continuance of the trial.

During trial, Kent Edge ("Mr.Edge"), the safety director for Appellant, was questioned regarding an accident report,[6] which was filled out following the collision. In the process of laying a foundation for admission of that report into evidence, Mr. Edge was asked if it was prepared in the ordinary course of business. His response was: "It's prepared for the insurance company." At that point, Appellant requested a mistrial, which was denied. There were no other references to insurance, or any implications of insurance, in the testimony or in the remaining proceedings before the jury.

Mallory Prewett, City Clerk for the City of West Plains, was called to prove up city ordinances: "Sec. 90–410. Signal legend; observance"; "Sec. 90–7. Authorized emergency vehicles";[7] "Sec. 90–2. Definitions";[8] and "Sec. 90–77. Duty to drive with care."[9] No objections were made to the admission of city ordinance Sec. 90–410, but Appellant objected to the other three city ordinances "as being in conflict with Missouri law and, therefore, irrele-

---

walk on the near side of the intersection or, if none, before entering the intersection and shall remain standing until a green indication is shown except as provided in subsection (a)(3)b of this section.

Significantly, we note this is nearly identical to the state statute, section 304.281.1(3)(a) which reads:

Vehicular traffic facing a steady red signal alone shall stop before entering the crosswalk on the near side of the intersection at a clearly marked stop line but, if none, then before entering the intersection and shall remain standing until an indication to proceed is shown except as provided in paragraph (b)[.]

5. This ordinance was not admitted into evidence and it is not contained in this Court's record.

6. This was not a report typically used by law enforcement officers in Missouri. It was on a different form utilized by the City of West Plains.

7. WEST PLAINS, MO., CODE OF ORDINANCES, art. I, Sec. 90–7(a)–(2) provides in relevant part that the "driver of an authorized emergency vehicle may ... [p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safety operation[.]"

8. WEST PLAINS, MO., CODE OF ORDINANCES, art. I, Sec. 90–2 "Authorized emergency vehicle" means:

(1) A vehicle publicly owned and operated as an ambulance or vehicle publicly owned and operated by the state highway patrol, police or fire department, sheriff, constable or deputy sheriff or traffic officer;
(2) Any privately-owned vehicle owned or operated as an ambulance responding to emergency calls;
(3) Any privately-owned wrecker or tow truck or a vehicle owned and operated by a public utility or public service corporation while performing emergency service, provided it is registered as such by the chief of police;
(4) Any privately-owned vehicle operated by a member of the county police department, sheriff, deputy sheriff, constable, deputy constable, coroner, deputy coroner or member of a policy department or any municipality in the county in the performance of his official duties.

9. WEST PLAINS, MO., CODE OF ORDINANCES, art. III, Sec. 90–77(a) recites: "Every person operating a motor vehicle shall operate and drive the vehicle in a careful and prudent manner, exercising the highest degree of care and at a rate of speed so as not to endanger property of another or the life or limb of any person."

vant." The objections were overruled and the city ordinances were admitted into evidence. Ms. Prewett then read to the jury a portion of city ordinance Sec. 90–2 defining "authorized emergency vehicle" over Appellant's objection. Appellant objected to reading city ordinance Sec. 90–2 to the jury because "[t]he instructions of the case are to be the law of the case and you're not to read or display a statute to the jury. . . . We believe the same law applies with regard to an ordinance."

During the jury instruction conference, Respondent tendered a negligence per se verdict director that Phenix failed to stop and remain standing at the red traffic signal. This instruction was patterned after Missouri Approved Jury Instructions ("MAI") 17.17 and MAI 19.01, and was consistent with both city ordinance Sec. 90–410 and section 304.281. This instruction was submitted to the jury over Appellant's objections that "its submitting the municipal ordinance, which is conflicted with state statute 304.022. It's not-paragraph first is not submitted, it's got two elements combined and it puts in a fact that's undisputed, that [Phenix] stopped." Appellant tendered an affirmative converse instruction in support of its affirmative defense that Phenix was in an "emergency vehicle" and was entitled to proceed through the red signal, and thus not negligent. The instruction was based on MAI 33.05(2) and sections 304.022 and 307.175. The tendered instruction was refused by the trial court.

The jury returned a verdict in the amount of $175,000 and the trial court, after applying a credit of $12,500, entered judgment against Appellant for $162,500. This appeal followed.

Appellant claims the trial court erred in: (1) allowing Respondent to amend her petition on the morning of trial and denying its motion for continuance; (2) allowing Respondent to submit a negligence per se verdict directing instruction based on a city ordinance; (3) refusing to submit to the jury the affirmative converse instruction patterned after MAI 33.05(2); (4) refusing to grant Appellant's request for a mistrial after Mr. Edge mentioned insurance during his testimony; (5) allowing Respondent to read city ordinance Sec. 90–2 to the jury; and (6) determining the reasonable value of medical treatment because there was not substantial evidence to rebut the presumption that the amount of the medical bills to be submitted into evidence was the amount actually paid.

### Point I: Late Amendment to the Pleadings

In its first point, Appellant asserts it was error for the trial court to permit Respondent leave of court to amend her petition to assert a negligence per se claim, based on Phenix's violation of city ordinances, because it was untimely. Respondent argues the trial court acted within its discretion in that there was no prejudice to Appellant. The issue for determination is whether granting Respondent leave to amend her petition deprived Appellant of a legitimate claim or defense.

### Standard of Review

■ "It is within the trial court's discretion to grant leave to amend pleadings, and this Court will not disturb the decision to grant leave to amend absent a showing the trial court obviously and palpably abused its discretion." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008). "Judicial discretion is abused when a ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Jaron Corp. v. Pellet*, 866 S.W.2d 897, 902 (Mo. App. S.D.1993).

## Analysis

■ Rule 55.33 [10] governs the procedure for amendments to the pleadings. "The nature of our pleading rules is to liberally permit amendments when justice so requires." *Downey v. Mitchell,* 835 S.W.2d 554, 556 (Mo.App. E.D.1992); Rule 55.33(a). When determining whether leave should be granted, a trial court should consider: "(1) the hardship to the moving party if leave to amend is denied; (2) the reasons for the moving party's failure to include the matter in the original pleadings; and (3) the injustice to the non-moving party should leave to amend be granted." *Lester v. Sayles,* 850 S.W.2d 858, 869 (Mo. banc 1993).

■ Appellant objected to Respondent's motion for leave on the ground that it would be prejudicial to Appellant's defense and argues this in its point on appeal. Prejudice suffered by the non-moving party is measured by whether a party is deprived of a *legitimate claim or defense* because the motion for leave to amend caught that party by surprise after it had developed its strategy. *Ferrellgas, Inc. v. Edward A. Smith, P.C.,* 190 S.W.3d 615, 619 (Mo.App. W.D.2006). "The real test is whether additional proof or additional witnesses for which a party is not prepared would be required to meet the new allegations. . . ." *Thompson v. Brown & Williamson Tobacco Corp.,* 207 S.W.3d 76, 114 (Mo.App. W.D.2006) (internal quotations and citations omitted).

■ Here, Respondent amended her petition to add an allegation of negligence based upon violation of city ordinances Sec. 90–410(a)(3) and Sec. 90–407. However, there was no change to the allegation that Phenix "violated the traffic signal." From the inception of the litigation, an issue consistently present was whether Phenix violated a red traffic signal and, according to Appellant's affirmative defense, if he was justified in doing so. This did not change with the amendment. Appellant failed to identify a legitimate claim or defense which it was deprived of because of the amendment. Appellant also failed to indicate any additional discovery, preparation, witnesses, or proof that was required in the face of this amendment. Therefore, we find the trial court's decision to permit Respondent leave to amend her petition did not deprive Appellant of a legitimate claim or defense. Accordingly, we find the trial court did not abuse its discretion.[11] Point I is denied.

### Point II: Alleged Error in Verdict Directing Instruction

Next, Appellant claims the trial court erred by permitting Respondent to submit a negligence per se verdict directing instruction "based on an ordinance of the City because the definition of an authorized emergency vehicle" as set forth in city ordinance Sec. 90–2 conflicts with the definition of an "emergency vehicle" as set forth in sections 304.022 and 307.175.[12]

---

10. All rule references are to Missouri Court Rules (2010).

11. Although Appellant also raises in this point trial court error in denying its motion for a continuance in face of the amendment to the petition, that allegation is not preserved because there is nothing on the record indicating such a motion or the trial court's ruling.

12. For clarity, we note Appellant's allegations of conflict arise from the difference in how the city ordinances and state statutes define

emergency vehicles. Missouri statutes provide that any motor vehicle, including a privately owned vehicle, operated by any member of an organized fire department, whether paid or volunteer, may be operated on streets and highways of the state as an emergency vehicle while responding to a fire call. §§ 304.022.4(3) and 307.175. However, city ordinances restrict emergency vehicles, operated for fire protection, to vehicles publicly owned and operated by a fire department. City ordinances Sec. 90–2 and Sec. 90–7. Significantly, the city ordinances, in contrast

This point misses the mark. The issue submitted here is if the jury instruction was erroneous because of a conflict between the city ordinance and state law.

### Standard of Review

■ Whether a jury is properly instructed is a question of law which we review *de novo*. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003).

### Analysis

■ Respondent's verdict directing "Instruction No. 7" as submitted was:

Your verdict must be for plaintiff Desiree Wheeler and against defendant City of West Plains, Missouri, if you believe:

First, defendant Michael Phenix was in vehicular traffic facing a steady red traffic signal alone and failed to stop before entering the intersection and remain standing until a steady green indication was shown, and

Second, such conduct directly caused or directly contributed to cause damage to plaintiff Desiree Wheeler.

Appellant's objections to this instruction were that: (1) it is based on a city ordinance that conflicts with section 304.022; (2) it combines two elements; and (3) it puts in a fact that's undisputed-that Phenix stopped. However, this instruction contains *no* reference to an "emergency vehicle." Respondent's claim was that Phenix was negligent per se for violating an ordinance or statute, for failing to stop at the red signal and remain standing until a green signal was shown. Appellant's affirmative defense is not presented in this instruction. This instruction was permit-

ted pursuant to a city ordinance or state law, as city ordinance Sec. 90–410(a)(3) and section 304.281.1(3) are nearly identical; the differences between the two are not pertinent to the issue presented here. Thus, any possible conflict with the definition of an "authorized emergency vehicle" between the city ordinance and the state statute is irrelevant to Appellant's point presented here. Therefore, the jury instruction was not error because of a conflict between the city ordinance and state law. Point II is denied.

### Point III: Denial of Affirmative Converse Instruction

Appellant's third point argues the trial court erred in refusing to submit a tendered affirmative converse instruction offered by Appellant, which was patterned after MAI 33.05(2) utilizing Appellant's affirmative defense. The determinative issue here is whether Appellant's tendered instruction was correct and in proper form.

### Standard of Review

■ We review the trial court's refusal to give a proffered instruction *de novo*, evaluating whether the instruction was supported by the evidence and the law. *Marion v. Marcus*, 199 S.W.3d 887, 893–94 (Mo.App. W.D.2006); Rule 70.02(a). "[W]e reverse only if we determine that error resulted in prejudice, Rule 70.02(c), and the error 'materially affect[ed] the merits of the action,' Rule 84.13(b)." *Id.*

### Analysis

■ Appellant had the burden of proof to persuade the jury on its affirmative

---

to the state statutes, do not include privately-owned vehicles being operated by members of a fire department as emergency vehicles. *Id.* Thus, a possible defense for violating a Missouri traffic control law when driving a privately-owned vehicle qualifying as an emergency vehicle under Missouri law, would not be available for a person operating the same

vehicle pursuant to the city ordinances. (*Compare* §§ 304.022.4(3) and 307.175 with city ordinances Sec. 90–2 and Sec. 90–7). Nevertheless, because none of Appellant's six points adduce genuine issues requiring resolution of this potential conflict we do not, and need not, resolve any possible conflict between the city ordinances and state statutes.

defense of legal justification or excuse. *Powers v. Ellfeldt,* 768 S.W.2d 142, 145 (Mo.App. W.D.1989). When a party is shown to have violated a duty or fixed standard created by statute or ordinance, a *prima facie* case of negligence or contributory negligence is made for the jury and that party must show legal justification or excuse for failure to comply with the statute or ordinance. *Robison v. Cameron,* 118 S.W.3d 638, 643 (Mo.App. S.D. 2003). This Court explained "the operator of an emergency vehicle that violates the provisions of a traffic ordinance or statute has the burden of proving that it was operating within the terms of the statute excusing emergency vehicles from violations of the traffic control laws under certain circumstances." *Id.*

█ It was also incumbent upon Appellant to submit a proper instruction establishing that defense. Appellant failed with respect to this requirement.

Appellant's tendered "Instruction A" was as follows:

> Your verdict must be for Defendants Michael Phenix and the City of West Plains, Missouri if you believe:
>
> First, Defendant Michael Phenix was operating an emergency vehicle; and
>
> Second, Defendant Michael Phenix was responding to an emergency; and
>
> Third, Defendant Michael Phenix sounded an audible signal by siren as was reasonably necessary; and
>
> Fourth, Defendant Michael Phenix's emergency vehicle was equipped with a lighted blue light that was visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle; and
>
> Fifth, Defendant Michael Phenix proceeded past the red signal after slowing down as was necessary for safe operation; and
>
> Sixth, Defendant Michael Phenix was not thereby negligent.

As used in this instruction, "emergency vehicle" means a motor vehicle operated by any member of an organized fire department while responding to a fire call during a bona fide emergency and while using or sounding a warning siren and using or displaying thereon fixed, flashing rotating blue lights.

First we note the lack of an entirely clear record of the trial court's refusal of Appellant's instruction. The only record of a discussion was:

> [Appellant's Attorney]: As we discussed, Judge, for package A against the City of West Plains, I have tendered Instruction A, which is the converse for legal justification under 33.052 MAI, 304.022 RSMo, 3071.—or .175 RSMo, *Robison v. Cameron* 118 S.W.3d 638 and *Cowell v. Thompson* 713 S.W.2d 52. The Court has refused that instruction. We believe it should be offered. We believe it's error that it's not been accepted. So we just make that record.

This was the extent of the record concerning any offers of the instruction, objections, and ruling by the trial court.

█ We recognize that when plaintiff's verdict director does not require a finding of negligence, as in negligence per se cases, it is error to give a true converse concerning negligence of the defendant. MAI Committee Comment (2002 Revision) 576–77 (citing *Oventrop v. Bi–State Dev. Agency,* 521 S.W.2d 488, 494 (Mo.App.ST. L.D.1975)). However, in this case where defendant seeks to instruct on legal justification or excuse, an affirmative converse, including the term "negligence" may be appropriate. Unlike a true converse, an affirmative converse should not use the same language submitted by the plaintiff's verdict director. *Cowell v. Thompson,* 713 S.W.2d 52, 55 (Mo.App. E.D.1986).

Nevertheless, "Notes on Use" to MAI instructions require the terms "negligent" and "negligence" be defined. (Notes on

Use 1, MAI 33.05(2)). Significantly, Appellant's tendered instruction introduces for the first time the term "negligence" in the jury instructions; there was no definition of "negligence" contained within the instruction itself or in a separate tendered instruction. Had the instruction been given, the jury would have received a roving commission on their interpretation of a term of law not appearing in the verdict director and undefined to them. *See Brewer v. Swift & Co.*, 451 S.W.2d 131, 133 (Mo. banc 1970).

 In addition, Appellant did not object to the form of Respondent's verdict director, or tender an instruction that included an affirmative defense tail for Respondent's verdict director. "[U]nlike a true converse instruction, there *is* a requirement that the verdict director contain a phrase, commonly referred to as an 'affirmative defense' tail, which refers the jury directly from the verdict director to the affirmative converse instruction." *Intertel, Inc. v. Sedgwick Claims Mgmt. Services, Inc.*, 204 S.W.3d 183, 208–09 (Mo. App. E.D.2006). "[W]hen the defendant's instruction submits an affirmative defense, it is error to give a verdict directing instruction for the plaintiff which does not include this 'tail', as it results in a conflict between the two instructions." *State ex rel. Missouri State Highway Comm'n v. Hensel Phelps Const. Co.*, 634 S.W.2d 168, 175 (Mo. banc 1982).

Appellant's tendered instruction was properly rejected because it was not correct or in proper form. Accordingly, Point III is denied.

### Point IV: No Prejudice from Mention of Insurance

Appellant's Point IV asserts the trial court erred in denying its motion for mistrial following Mr. Edge's testimony that a report was prepared for the insurance company because the injection of insurance was prejudicial to Appellant. The determinative issue is whether Respondent injected the existence of liability insurance in bad faith and prejudice resulted.

### Standard of Review

 A mistrial is a drastic remedy, and the decision to grant one for misconduct or the introduction of prejudicial evidence is largely within the trial court's discretion. *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 675 (Mo.App. S.D.2008). The trial court is better able to determine the prejudicial effect of improper evidence on the jury and to evaluate whether any resulting prejudice can be cured by less drastic means than granting a mistrial. *Id.* We will reverse a trial court's denial of a motion for mistrial only when there has been a manifest abuse of discretion. *Id.* "To establish manifest abuse of discretion, an error must be of such a grievous nature that prejudice cannot otherwise be removed." *Id.*

### Analysis

 "Generally, it is improper to inject the issue of the existence of liability insurance into an action for damages." *Woods*, 248 S.W.3d at 675–76 (internal quotation omitted). The injection of insurance into a case may constitute reversible error if done in bad faith; however, not every reference to insurance warrants reversal. *Id.* at 676. "A trial court is afforded great deference in determining whether the reference to insurance was injected into the trial in good faith." *Id.* The party alleging the references constitute reversible error must demonstrate that it was prejudiced by the references. *Id.*

 Here, Mr. Edge was called as a witness to identify and lay the foundation for the "City of West Plains Vehicle and Property Accident Report." Respondent's attorney maintained he was using the doc-

ument solely to show Phenix was operating a privately-owned vehicle at the time of the accident. Appellant objected on the basis that it was a report prepared for an insurance company, and not relevant because there was no dispute Phenix was driving a privately-owned vehicle. In attempting to lay the proper foundation for a business record, Respondent's attorney asked Mr. Edge:

> Q. This City of West Plains Vehicle or Property Accident Report is prepared in the ordinary course of business, isn't it?
>
> A. It's prepared for the insurance company.

Here, Appellant has failed to demonstrate Mr. Edge's reference to the insurance company was injected in bad faith or that it suffered prejudice requiring a mistrial. Although it is unclear whether the fact Phenix's vehicle was a personal vehicle was actually in dispute, we cannot say the single reference elicited by Respondent's counsel reflects bad faith. In fact, the question was phrased to elicit a "yes" or "no" response. Mr. Edge, unsolicited by Respondent's counsel, chose to include the additional detail in his answer. Respondent's counsel did not mention it again while cross-examining Mr. Edge, and Appellant has not pointed us to any additional instance where Respondent referenced it. Additionally, Mr. Edge is employed as Appellant's safety director, and Appellant cannot complain of testimonial errors committed by its own employee/witness. *See Missey v. Kwan*, 595 S.W.2d 460, 465 (Mo. App. E.D.1980). This is especially the case where, as here, Respondent's counsel's questions were not intended to elicit the fact of insurance, that fact being placed before the jury by Appellant's own unresponsive answer. *Id.*

There is little or nothing in the record to suggest the jury's award had anything to do with this single reference to the possi-bility of insurance coverage being available. Appellant merely concludes, without specifically alleging how it was prejudiced, that the mention of insurance is "clearly prejudicial." The cases Appellant cites in support are all distinguishable in that they involve multiple references to insurance or demonstrate bad faith. Appellant also fails to demonstrate it was prejudiced by the reference.

Appellant has not shown Respondent injected the existence of insurance into the case in bad faith or that it was prejudiced by Mr. Edge's reference to insurance. There was no showing of abuse of discretion in refusing Appellant's motion for mistrial. Point IV is denied.

### Point V: Reading of City Ordinance

Next, Appellant argues the trial court erred in allowing Respondent to read city ordinance Sec. 90–2 to the jury because the jury is to derive the law from the instructions submitted to it, and the ordinance misled the jury in the purported conflict between the ordinance and state statute. Appellant's argument is without merit.

### Standard of Review

The admission or exclusion of evidence by the trial court is reviewed for an abuse of discretion. *Woods*, 248 S.W.3d at 673.

### Analysis

Appellant avers that this Court should apply the same case law that prohibits reading or displaying statutes to juries. However, we find an important distinction in statutes and city ordinances. Unlike state statutes, city ordinances must be proven into evidence at trial. *Duly v. Heflin*, 873 S.W.2d 932, 935 (Mo.App. W.D. 1994). Appellant admits it has not found any cases addressing the propriety of reading a city ordinance to the jury. Ad-

ditionally, "[r]eading statutes to the jury is reversible error only if counsel misstates the law, or states it in a manner calculated to mislead the jury." *Inman v. Bi-State Dev. Agency*, 849 S.W.2d 681, 683 (Mo. App. E.D.1993).

Here, Appellant's argument would fail even if we were to determine the prohibition of reading or displaying a statute to the jury was equally applicable to city ordinances. This is because in reading city ordinance Séc. 90–2 to the jury, Respondent did not misstate the law or attempt to mislead the jury. Appellant specifically alleges city ordinance Sec. 90–2 misled the jury because the definition of "authorized emergency vehicle" set forth in that ordinance conflicted with the state statute; however, as discussed earlier, any potential conflict in the definitions is irrelevant to the outcome of this case because neither the state, nor the city ordinance definition was submitted in a verdict director—the only submission in the instructions on this point pertained to Phenix's violation of a steady red traffic signal. Again, the law in this respect, under state statute or city ordinance, is the same. (*Compare* city ordinance Sec. 90–410(a)(3) *with* § 304.281.1(3)).

Because there was no error in reading city ordinance Sec. 90–2 to the jury, and no prejudice resulted, Point V is denied.

### Point VI: Value of Medical Services

Finally, Appellant asserts the trial court erred in finding the amount of Respondent's medical bills to be the value of services provided because Respondent's proof was not sufficient to rebut the presumption set forth in section 490.715. The determinative issue here is whether Respondent's affidavits, submitted pursuant to 490.525, constituted substantial evidence that the amount charged was reasonable and necessary.[13]

### Standard of Review

The standard of review for determining whether or not evidence has been introduced which would rebut the presumption is stated in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). *Hamilton v. Hamilton*, 817 S.W.2d 937, 940 (Mo.App. W.D.1991). We must affirm the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

### Analysis

Section 490.715.5[14] establishes a rebuttable presumption that the amount actual-

13. After the trial of this matter, and before initial briefs were submitted to this Court, our supreme court issued the decision of *Deck v. Teasley*, 322 S.W.3d 536 (Mo. banc 2010). *Deck* set forth in more detail how proof may be handled on the issue of medical bills. Specifically, *Deck* held that the trial court erred in precluding the plaintiff from presenting evidence of unpaid medical expenses she was not obligated to pay and limiting her to presenting evidence of her medical expenses that were actually paid or that she was obligated to pay. *Id.* at 538. This was because she had presented substantial evidence that the amount she was billed was the value of medical treatment rendered. *Id.* at 541. *Deck*

clarified that when "the presumption is rebutted, the party's other evidence of value, as well as the amount necessary to satisfy the financial obligations, is admitted at trial as if no presumption exists." *Id.* at 540. However, in the present case, Appellant did not attempt to also admit the amount actually paid at trial. Instead, Appellant only challenges the sufficiency of Respondent's proof to overcome the presumption of section 490.715. Thus, we need not address the application of *Deck* to this point.

14. Section 490.715.5 provides:
 (1) Parties may introduce evidence of the value of the medical treatment rendered to

ly paid to the medical provider represents the value of a plaintiff's medical treatment. "[T]he presumption of value found in section 490.715.5 can be rebutted by substantial evidence establishing a different value. The 'additional evidence' a court may hear includes, but is not limited to, the 'medical bills incurred by a party.'" *Berra v. Danter*, 299 S.W.3d 690, 697 (Mo.App. E.D. 2009) (quoting § 490.715.5(2)(a)).

Section 490.525 clarifies the applicable requirements when a plaintiff submits affidavits from medical providers in an effort to rebut that presumption:

2. Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

3. The affidavit shall:

(1) Be taken before an officer with authority to administer oaths;

(2) Be made by the person or that person's designee who provided the service;

(3) Include an itemized statement of the service and charge.

§ 490.525.2–3. In *Hall v. Wal–Mart Stores East, LP*, this Court affirmed that section 490.525 permits a court or jury to find in

a party that was reasonable, necessary, and a proximate result of the negligence of any party.
(2) In determining the value of the medical treatment rendered, there shall be a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered. Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical treatment rendered based upon additional evidence, including but not limited to:

accordance with an affidavit, even though it does not require such a finding. 316 S.W.3d 428, 430 (Mo.App. S.D.2010).

■ Here, both parties filed motions to determine the reasonable value of medical services provided to Respondent, pursuant to section 490.715. Respondent relied on nine affidavits that were submitted, pursuant to section 490.525, to rebut the statutory presumption. Appellant subpoenaed three affiants of the affidavits, and two employees of the medical providers who had also submitted affidavits, regarding Respondent's medical services. Appellant specifically argues "[b]ecause these witnesses testified that they did not know about their respective offices billing practices and could not render an opinion as to whether Wheeler's medical bills were reasonable and necessary, their testimony was based upon mere speculation, guess or conjecture and should have been afforded no probative value." In reviewing the affidavits and testimony, we find substantial evidence was presented to rebut the statutory presumption and the trial court's finding was supported by substantial evidence.

First, Respondent submitted nine affidavits that the amount charged was necessary and reasonable in compliance with section 490.525. Each affidavit was signed by the custodian of records before an officer with authority to administer oaths. The affidavits stated that the affiant was "the person designated by said Healthcare

(a) The medical bills incurred by a party;
(b) The amount actually paid for medical treatment rendered to a party;
(c) The amount or estimate of the amount of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.
Notwithstanding the foregoing, no evidence of collateral sources shall be made known to the jury in presenting the evidence of the value of the medical treatment rendered.

Provider to make this Affidavit." Additionally, the affidavits explained that:

> The amount that the above-named Patient was charged for treatment and services was reasonable and necessary at the time and place that the treatment was provided, and said charges represent the value of the medical treatment rendered to said patient irrespective of the dollar amount necessary to satisfy the financial obligation to this Healthcare Provider.

Finally, itemized statements of services and charges were attached to the affidavits. Since no controverting affidavits were filed—as provided by section 490.525—the affidavits that the amount Respondent was charged for a service was reasonable at the time and place that the service was provided, and that the service was necessary, is sufficient evidence to support a finding of fact by a judge or jury that the amount charged was reasonable or that the service was necessary. *See* § 490.525.2; *Hall,* 316 S.W.3d at 430.

Additionally, Appellant inaccurately characterizes the witnesses' testimony as being based upon "mere speculation, guess or conjecture." Each of the affiant witnesses was an employee designee of a healthcare provider to Respondent who attested familiarity with the nature of the services and the standard charges therefore. For example, Sabrina Collins testified the charges represented the reasonable value of the services provided; the charges were set at what the services were worth and were "in keeping" with charges for similar services in the local area; and that any other patient receiving the same services would have been charged the same amount. She also agreed that even if the provider applies a Medicare or other adjustment, the value of the services ren-

dered is unaffected, and that whatever the hospital charges is the reasonable value, irrespective of what it might get paid. Testimony to similar effect was given by Debra Dykas and Carlissa Turner. Thus, not only did the affidavits purport personal knowledge,[15] but the affiants' testimony further supported the affiants' experience and personal knowledge of their respective healthcare providers' services and charges. As this issue was submitted pursuant to agreement, the credibility of witnesses and the weight to be given their testimony on this issue was a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988).

We find Respondent's affidavits, in accordance with section 490.525, provided substantial evidence rebutting the value of medical services. Point VI is denied.

Accordingly, we affirm the judgment of the trial court.

SCOTT, C.J., and RAHMEYER, P.J., Concur.

---

15. The affidavits also stated: "My name is [affiant], I am of sound mind, capable of making this affidavit, and *personally acquain-* *ted* with the facts herein stated[.]" (Emphasis added).