Patricia MOLL, Plaintiff/Appellant,

v.

**GENERAL AUTOMATIC TRANSFER COMPANY, Defendant/Respondent.**

No. 63231.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 12, 1994.

Newman & Bronson, Marc S. Wallis, St. Louis, for plaintiff-appellant.

Peper, Martin, Jensen, Maichel and Hetlage, Ian P. Cooper, St. Louis, for defendant-respondent.

KAROHL, Judge.

A jury found both plaintiff, Patricia Moll, and defendant, General. Automatic Transfer Company (GAT), free of any fault for injuries she sustained while working for Lee Rowan Company. She sustained burns on both legs when she stepped into a pool of hot water inside a washer unit which was designed, manufactured and sold by GAT to Lee Rowan Company. In order to secure a new trial on her products liability claim she argues error in: (1) admitting state of the art and absence of other accidents evidence; (2) refusing withdrawal instructions on this evidence; (3) submitting to the jury defendant's comparative fault instruction; and, (4) allowing the jury to have an annotated copy of a verdict form which identified it was submitted by plaintiff, the MAI source, and cited a statute.

GAT contests each claim of error on substantive and procedural grounds. It claims either the evidence is mischaracterized by plaintiff, or she opened the door for the evidence, or the point of error is not preserved, or moot. In the alternative, GAT argues plaintiff did not and cannot prove the washer was being used in a manner reasonably anticipated at the time of the injuries. As a matter of law, injury from use of a product in an "unannounced and unexpected" manner will not support a strict liability-product defect cause of action. *Baker v. International Harvester Co.*, 660 S.W.2d 21, 23 (Mo.App.1983).

If defendant's contention that plaintiff failed to make a submissible case is sustained, or if the verdict excludes the possibility any of the claimed errors are prejudicial, then the argued errors will not support the relief plaintiff seeks. Rule 84.13(b). If defendant is entitled to judgment, as a matter of law, then plaintiff's claims of error must fail as not prejudicial. If the zero percent

fault verdict is supported by evidence and was not influenced by any of the claimed errors, they could not be prejudicial.

The evidence supporting plaintiff's submission was as follows. Plaintiff was, and still is, a factory worker for Lee Rowan Company in Jackson, Missouri. She was first employed in 1974. She was injured on April 4, 1988.

Defendant designed, manufactured and sold the industrial two-stage washer to plaintiff's employer. GAT's bid and proposal, accepted by Lee Rowan, contained a provision that each tank would be furnished with an eighteen inch catwalk over the top of the tank which would serve as a "personnel platform for maintenance and a work guard." Defendant manufactured and sold over 400 similar washers over the years, all with an eighteen inch catwalk. Plaintiff was injured in Lee Rowan's "No. 2 washer" purchased in 1985.

The washer is shaped like a rectangular metal box and looks like a tunnel. It is approximately forty-six feet long, eight feet eleven inches tall and five feet wide on the inside, from wall to wall. At each end of the washer there is an opening through which product pieces move while hanging on a conveyor attached to the ceiling. Spray nozzles are spaced every twelve inches on risers which are distributed throughout the washer. As pieces move through the washer, they are sprayed by the nozzles with water mixed with a powerful soap containing iron phosphate. This removes dirt and grease. The purpose is to prepare the product for coating.

The interior of the washer was manufactured with beams running across the width. There is an eighteen inch wide catwalk extending down the center of the length of the washer. The catwalk covers heating units which maintain the water temperature inside the tank at between 140 and 160 degrees during use. The water temperature is controlled by a thermostat dial located outside the washer. The water that is sprayed through the risers and nozzles is heated at the bottom of the washer with heat exchangers covered by the catwalk. The water is approximately one foot ten inches deep at its deepest point throughout the floor of the washer.

On April 4, 1988, plaintiff was directed by her supervisor to enter the washer through a doorway which is in the middle of the length side of the washer. She had never been inside the washer before. Lee Rowan provided no information regarding the interior of the washer. It provided plaintiff with no training or instruction on the manner of the performance of her assignment. She was to locate pieces that had fallen from the conveyor hangers, if any, in order that they might be removed for return to the conveyor. In order to locate fallen pieces plaintiff began to move along the catwalk in the dark. No artificial light was provided in the design and construction. When she entered the washer, twelve foot long shelving pieces remained on the hangers. It was necessary for her to push hanging shelving aside. The shelving pieces weighed approximately 100 to 120 pounds. The heating units were not turned down to facilitate her efforts inside the washer. While she was attempting to push shelving out of the way she slipped off the catwalk so that her right leg and left foot went into the hot water.

Plaintiff sustained burns on both legs. She was hospitalized for one month after the accident. Numerous skin grafts were performed. The issues for decision do not include the nature and extent of her injuries.

■ Plaintiff tried her case on the theory of strict liability-product defect. She submitted that theory with an instruction patterned after MAI 25.04 [1978 Revision]. She expressly disavowed a failure to warn claim. The elements of her cause of action were therefore: (1) the washer was in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (2) the washer was used in a manner reasonably anticipated; (3) the defective condition existed when the washer was sold; and, (4) the defect directly caused or contributed to cause the injuries.

■ Plaintiff offered the testimony of H. Boulter Kelsey, a consulting, board-certified, forensic engineer. He assumed the washer was designed and manufactured to provide

safe access for production workers to enter inside the washer where the conveyor system was located. He also assumed production demands prevented reducing the water temperature at the end of each shift when production workers would enter the washer. Neither of his assumptions were supported by evidence. Particularly, there was no evidence GAT was informed production workers would enter the washer between shifts under any circumstances or that the design and manufacture should accommodate that use.

Kelsey concluded the washer was defective and unreasonably dangerous when put to foreseeable normal uses, including entry inside the washer. The two defects he cited were a too narrow catwalk and absence of an artificial lighting system. Kelsey did not address the effect of the failure of Lee Rowan to inform plaintiff about the interior of the washer, instruct her how to safely perform her assignment, or the failure to clear the conveyor system of any hanging pieces which would block and hinder the worker. Kelsey's testimony was premised, in part, on the belief that it would have taken hours for the water to cool down between shifts. Plaintiff offered testimony of employees of Lee Rowan that the cool down period would be fifteen to twenty minutes. Lee Rowan employees also testified that there were no company instructions preventing them from turning the water temperature down before production workers entered the washer. There was evidence that the ideal operating temperature was 140 degrees and that at the time plaintiff was burned, the temperature was 148 degrees. Kelsey testified that the burn threshold temperature was 130 degrees. Based on this evidence employees would not have been exposed to burns if the temperature was allowed to cool between ten and eighteen degrees. Defendant promptly objected to Kelsey's assertion that the washer was "obviously intended for the [employees] to get inside and get the product that fell from the conveyor." The objection was never ruled by the trial court. The statement, if probative, was wholly unsupported by any evidence.

GAT consistently maintained plaintiff's injuries were sustained at a time and under circumstances it could not have reasonably anticipated. If plaintiff failed to prove this proposition untrue, she failed to make a submissible case. GAT developed this theory of defense with the testimony of its president, James N. Guirl, and its expert witness, John R. Rogers. Guirl testified the intended use of the washer was to wash parts and prepare them for coating. There was no pre-sale discussion with Lee Rowan from which it should have foreseen untrained workers would go inside the washer with products still hanging on the conveyor and without turning the water temperature down to a safe level. The washer was designed to accommodate the size of the product and the speed of the conveyor. The catwalk was designed only to give maintenance workers access to the nozzles and risers, not for use by production workers. Guirl testified, "It is not meant in any way, shape or form to transport personnel when there is work in the washer." The catwalk's "secondary purpose is to act as a guard over the top of the heat exchanger," to protect the heating unit from falling product. The catwalk was a "work guard" for the heating unit. For those two purposes all washers were built with eighteen inch wide catwalks.[1] The bid submitted to and accepted by Lee Rowan, quoted earlier in this opinion, referred to the installation of a catwalk for maintenance personnel only and as a work guard. Guirl categorically denied that it was reasonably foreseeable that workers would use the maintenance worker catwalk to enter the washer at any time, especially when the water solution was at 140 degrees. The water temperature had to be reduced to a safe level before maintenance personnel entered the washer unit.

Defendant's expert, John R. Rogers, a registered professional engineer, explained to the jury that plaintiff's accident occurred because she was using the unit in a manner not reasonably anticipated. He believed there was no reason to foresee that Lee Rowan's knowledgeable operators would permit an uninformed, untrained worker to enter the

1. This is the type of evidence plaintiff contends was inadmissible state of art evidence. It wasn't.

washer "under the ambient conditions that existed in that washer." He concluded the washer was not defective or unreasonably dangerous when put to its reasonable anticipated use.

Rogers concluded that there was no necessity for production workers to enter the washer to remove or replace fallen pieces. The decision of Lee Rowan that its production workers enter the washer between shifts, with the conveyor loaded, without information and training and without reducing the water temperature, was an abnormal misuse of the washer. He emphasized that if personnel were to enter the washer under the adverse circumstances presented to plaintiff, then training was critical. The proper use was to unload the conveyor, weekly or monthly, reduce the heat to cool down the solution, and send in maintenance employees, not production line workers, to retrieve the fallen pieces.

The zero percent fault verdict for defendant was supported by this evidence. The jury could have reached this result by finding the reasonably anticipated use of the washer was for entry by maintenance workers only; and, if not, by informed and trained production workers with nothing on the conveyor and with a safely reduced water temperature. The width of the catwalk was immaterial for maintenance workers who would enter periodically when the water solution was cool.

We find that plaintiff's various claims of error are without merit. Plaintiff claims error in allowing evidence that all manufacturers made industrial washer units with eighteen inch catwalks. She contends this is state of the art evidence which is not probative in a case where failure to warn was not an issue and admission violates § 537.764.2 RSMo Cum.Supp.1993. She also claims error in refusing to withdraw consideration of such evidence.

■ This point fails for several reasons. First, the evidence was admitted without objection on the basis of state of the art evidence. The point is not preserved. *State v. Northeast Building Co.*, 421 S.W.2d 297, 301 (Mo.1967).

■ Second, plaintiff also offered similar evidence. The issue was thereby waived. *Schisler v. Rotex Punch Co., Inc.*, 746 S.W.2d 592, 594 (Mo.App.1988).

■ Third, the evidence was relevant to prove the purpose or intended use of catwalks in washers by maintenance employees. It was also relevant on the scope of expert witness' familiarity with industrial washers.

■ Fourth, the evidence in question is not "state of the art" evidence. The definition of "state of the art evidence" contained in § 537.764.1 RSMo Cum.Supp.1993, does not apply to the evidence on the width of catwalks. State of the art evidence is ordinarily offered as a complete defense where plaintiff relies on a failure to warn theory. Section 537.764.2. The catwalk evidence in the present case was not offered to prove an inability on the part of GAT to know and recognize a scientifically knowable danger because of insufficient technology. If there was a danger, it was open and obvious at the time of design and manufacture.

■ Naturally, if admission of the evidence was not error, the failure of the court to withdraw it was also not error. A withdrawal instruction is appropriate only when there is evidence of a false issue, improper evidence or evidence of an abandoned issue. *State ex rel. Missouri Hwy. and Transp. Com'n v. V. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 486 (Mo.App.E.D.1992).

■ Plaintiff also complains about admission of evidence of no prior accidents or injuries related to use of the washer unit. She argues there was an insufficient foundation to show relevance of such evidence and it was immaterial in a defective product cause of action. She claims the jury was misled or confused by this evidence. This point also fails for two reasons.

First, plaintiff offered evidence of the absence of prior injuries. She also offered evidence of one prior minor injury. Both offers opened the door for defendant's evidence. The court did not err in this respect. *Schisler v. Rotex Punch Co., Inc.*, 746 S.W.2d 592, 594 (Mo.App.1988). Second, this type of evidence has been held relevant and admissi-

ble in product liability cases where the theory is design defect. *Nash v. Stanley Magic Door, Inc.*, 863 S.W.2d 677, 680 (Mo.App. E.D.1993).

■ Plaintiff also complains of error in submitting defendant's comparative fault instruction. The jury found plaintiff free of any fault. Because of that finding, submission of the instruction cannot be found prejudicial. *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518, 522 (Mo. banc 1986). Moreover, plaintiff acknowledged that she entered the washer when it was too dark to see, without any advance information as to the circumstances within the washer and without receiving any instructions to assist her in performing her assignment. The instruction submitted plaintiff's failure to undertake reasonably careful precautions. It tracked, essentially word for word, the language contained in § 537.765 RSMo Cum. Supp.1993, effective April, 1988.

The mechanical error in furnishing an annotated "Verdict A" form is the basis of plaintiff's last claim of error. No other instructions or forms were annotated. The jury utilized the defective form and ten jurors joined in the verdict. The additional information at the bottom of the form was "Submitted by plaintiff, MAI 37.07 [1986 new]; § 537.765 RSMo (1987)."

The mistake was inadvertent. Therefore, it was not known or recognizable by any of the parties before the fact. The issues are whether it was error and whether plaintiff was prejudiced. Rule 84.13(b).

■ GAT relies on *Anglim v. Missouri Pac. R.R. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992) for the proposition that plaintiff submitted the verdict form and therefore cannot complain. We assume plaintiff prepared an original copy without annotation, and copies for the court and counsel with annotations. We interpret the error to be a mechanical mistake with reference to the copy of the verdict form delivered to the jury. Plaintiff was not at fault. She is not disqualified from asserting the error. It clearly violated MAI form and direction. It was error.

■ However, the claim of prejudice is that the jury must have been confused because the verdict form contained the statement "submitted by plaintiff" which conflicts with statements that instructions were on matters of law and properly the function of the court. This ground for relief was not presented to the trial court in the motion for new trial. Accordingly, it is not a matter of preserved error and is reviewable only as a matter of plain error. In the absence of some evidentiary support we find no basis to conclude that any juror was confused solely because the verdict form given to the jury disclosed submission by plaintiff and made some legal references. The nature of prejudice is purely speculative, unclear and uncertain. We find the mistake was not inherently prejudicial and not a matter of plain error.

We find and hold that claims of error in support of a new trial are without merit. We also find that plaintiff failed to prove she was using the industrial washer normally and in a manner which GAT could reasonably foresee or reasonably anticipate.

We affirm.

SIMON, P.J., and PUDLOWSKI, J., concur.