Joyce C. BEAN and Robert Kampert, Co–Conservators of the Estate of Sara Kampert, a Minor,

and

Joyce C. Bean and Robert Kampert, Co–Conservators of the Estate of Lacie Marie Kampert, a Minor,

and

Christopher Newbury, By and Through his Natural Mother and Next Friend, Tamara Newbury,

and

Robert Kampert and Barbara Kampert, Respondents,

v.

SUPERIOR BOWEN ASPHALT COMPANY, LLC, Appellant.

No. WD 71638.

Missouri Court of Appeals, Western District.

April 12, 2011.

Application for Transfer to Supreme Court Denied May 31, 2011.

Application for Transfer Denied June 28, 2011.

Paul D. Cowing, Lee's Summit, MO, for Appellant.

Phillip S. Smith, Kansas City, MO, James Montee, St. Joseph, MO, for Respondents.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

Superior Bowen Asphalt Company ("Superior") appeals the Circuit Court of Platte County's ("trial court") amended judgment granting a new trial to the Estate of Sara Kampert, the Estate of Lacie Marie Kampert, Robert Kampert, Barbara Kampert and Christopher Newbury (collectively "the Kamperts") in their wrongful death action against Superior for the death of James Kampert. The trial court granted the Kamperts' motion for a new trial based upon jury confusion caused when two instructions (one submitted by the Kamperts and one submitted by Superior) were read together. We affirm the judgment of the trial court.

### Factual and Procedural Background

On September 28, 2005, an underground mining operation was underway at Hunt Martin. The activity in the mine created a large amount of dust that made working conditions difficult for the mine employees. To alleviate the dust problem, certain Hunt Martin employees would periodically water the roads inside the mine and above ground at the mine site. Hunt Martin kept two water trucks specifically for this purpose. On September 28, 2005, however, those two water trucks were inoperable. Since the Hunt Martin trucks were not working, an employee of Superior, an asphalt production company located adjacent to Hunt Martin, brought Superior's own water truck over to Hunt Martin to water the aboveground roads for them. Superior also watered the surface of the Superior property to alleviate the dust created by the neighboring mine. This truck was driven by a Superior employee and was not taken underground.

James Kampert ("Kampert") was an employee on the evening shift at the Hunt Martin mine. By the time Kampert reported for work on September 28, Superior had closed business for the day. Kampert was concerned about the dusty conditions inside the mine and knew that Hunt Martin's water trucks were not working. Kampert took it upon himself to go next door to Superior's property and borrow its water truck. Apparently no Hunt Martin supervisor had asked Kampert to do this or knew of Kampert's intention. Kampert had never before been on Superior's property. Superior had never lent any of its equipment to Hunt Martin and had not given Hunt Martin permission to borrow its water truck. In fact, Superior had a policy that all trucks were to be locked at night with the keys kept inside a Superior building. On September 28, however, Kampert found the Superior water truck unlocked with the keys inside the truck.

Kampert drove the Superior water truck, which was full of water, off the Superior property and onto the Hunt Martin property. Kampert then attempted to drive the Superior water truck down into the mine to water the underground roads. The pitch of the road leading down into the mine was very steep—approximately a seventeen- to eighteen-percent grade. Kampert soon lost control of the heavy, fully-loaded water truck. The brakes on the truck, which had worked fine for Superior's use above ground, could not slow the truck on the steep grade. Kampert jumped from the truck, but was run over and did not survive.

The Kamperts, who are the parents and children of James Kampert, brought an action for wrongful death against Superior, alleging that Superior failed to properly

maintain the brakes on the Superior water truck and that Superior was negligent in leaving the keys in the truck on September 28, 2005. In its defense, Superior claimed that the truck's brakes were maintained in a manner that was sufficient for its use and that Kampert was negligent in taking the truck down into the mine.

After the close of the evidence at the trial, the Kamperts submitted to the jury a comparative fault verdict director that read as follows:

In your verdict you must assess a percentage of fault to defendant whether or not James Kampert was partly at fault if you believe:

First, plaintiffs were the children and parents of James Kampert, and

Second, defendant's employees failed to remove the keys from the truck being operated by James Kampert, and

Third, defendant's employees were thereby negligent, and

Fourth, *as a direct result of such negligence,* James Kampert died.

(Emphasis added.) The trial court accepted the Kamperts' verdict director and gave it to the jury as Instruction No. 7.

Superior submitted two alternate instructions submitting Kampert's comparative fault. The Kamperts objected to the first, and it was rejected by the trial court. The Kamperts did not object to the second comparative fault instruction submitted by Superior, and the trial court gave the instruction to the jury as Instruction No. 8. It read:

In your verdict you must assess a percentage of fault to James Kampert if you believe:

First, James Kampert took defendant's water truck into the underground mine, and

Second, James Kampert was thereby negligent, and

Third, such negligence of James Kampert *directly caused or directly contributed to cause* the death of James Kampert.

(Emphasis added.)

During the jury's deliberation, it submitted to the court the following question concerning Instructions seven and eight, "Instruction # 7 seems to conflict with Instruction # 8 as # 7 asks whether JK's death was a **direct result** of SB's negligence versus whether SB [sic] **directly contributed** to JK's death. Which verb[i]age should we consider, the direct contribution or direct result?"

The trial court responded, "I am sorry I am not permitted to answer your question. You are to be governed by the instructions and the evidence as you remember it."

The jury returned a verdict assessing damages of $1,000,000, with fault allocated ten percent to Superior and ninety percent to Kampert. The Kamperts filed a timely motion for new trial "on the basis that plain error occurred in submitting conflicting and confusing jury instructions," and that the verdict was against the weight of the evidence.

The trial court granted the Kamperts' motion for a new trial, stating that "the Court finds that Instruction # 7 and Instruction # 8 are inconsistent and, because of the Court's error, Plaintiff[s'] Motion for New Trial should be sustained." Superior's appeal follows.

## Standard of Review

■ We review a trial court's grant of a new trial under Rule 78.01 for an abuse of discretion. *Damon Pursell Constr. Co. v. Mo. Hwy. & Trans. Comm'n,* 192 S.W.3d 461, 469 (Mo.App. W.D.2006). We defer more to a trial court sustaining a motion for a new trial than we do to a trial court that has denied such a motion. *Id.* This is

"because the right of a trial court to grant a new trial involves judicial discretion, which many times is founded upon matters known to the court ... but unknown to us. . . . This precept has been afforded complete accommodations in appeal cases involving jury instructions." *McTeer v. Clarkson Constr. Co.*, 807 S.W.2d 174, 181 (Mo.App. S.D.1991) (quoting *Brittain v. Clark*, 462 S.W.2d 153, 157 (Mo.App.1970)).

## Legal Analysis

■ The trial court in this case granted the Kamperts' motion for new trial because it apparently found plain error in the combination of the parties' comparative fault verdict directing instructions. Because neither party objected to the verdict directing instructions given during the trial, the court's consideration of the motion would have been pursuant to Rule 78.08, which allows new trials when the court has plainly erred. Although the order granting the motion did not make any express finding of plain error, manifest injustice, or miscarriage of justice, it stated, "[T]he Court finds that Instruction # 7 and Instruction # 8 are inconsistent and, because of the Court's error, Plaintiff[s'] Motion for New Trial should be sustained."

■ To reverse a trial court's grant of a new trial due to instructional error, the appellant must either show that the instructions were not, in fact, erroneous or that there was no potential for prejudice from the erroneous instruction. *MFA Oil Co. v. Robertson–Williams Transp., Inc.*, 18 S.W.3d 437, 439 (Mo.App. W.D.2000). In this case, neither party's instruction standing alone was erroneous, but the trial court found that, when considered together, the inconsistent language created error. Superior, on appeal, claims that the Kamperts suffered no prejudice as a result of the error.

■ Appellate courts will not assume "[i]n the absence of some evidentiary sup-port" that instructional error confused the jury, thereby prejudicing a party to the underlying suit. *See Moll v. Gen. Automatic Transfer Co.*, 873 S.W.2d 900, 904 (Mo.App. E.D.1994). In this case, however, neither the trial court nor this court is left with any doubt as to whether the discrepancy in the language of the two comparative fault verdict directing instructions created confusion for the jury. The jury wrote a note to the trial court professing its confusion over the "conflict" in the language and asked the court for clarification. The trial court, unable to rectify the situation by giving the jury new instructions during its deliberation, could only advise the jury to follow the instructions they were given and then grant the motion for new trial. Under the facts of this case, it is clear that the two instructions caused confusion and prejudice to the parties.

■ The crux of Superior's appeal is that the Kamperts, as the parties who submitted Instruction # 7 (which ultimately caused the jury's confusion), invited the error. Thus, Superior concludes, the Kamperts cannot be heard to complain of the error, either in a motion for new trial or on appeal. Superior cites many cases that hold that a party may not claim error based on an erroneous jury instruction that the party itself submitted to the court. *See, e.g., Parsons Constr. Co. v. Mo. Pub. Serv. Co.*, 425 S.W.2d 166, 171 (Mo.1968); *Harrington v. City of Sedalia*, 98 Mo. 583, 12 S.W. 342, 343 (1889); *Beeny v. Shaper*, 798 S.W.2d 162, 163 (Mo.App. E.D.1990); *Schisler v. Rotex Punch Co.*, 746 S.W.2d 592, 594 (Mo.App. E.D.1988). The case before us is distinguishable from all of these cases, however, in that the instructions that the parties submitted to the court, examined individually, were not erroneous at all. Each was patterned after appropriate MAI instructions.

Superior's instruction was clearly appropriate. It follows MAI 32.01(3) exactly

and contains the "directly caused or directly contributed to cause" language.

The Kamperts' verdict directing instruction was based upon MAI 20.01, the verdict director for wrongful death, which contains the "direct result" language; MAI 37.01, the verdict directing modification that is required when comparative fault is alleged; and MAI 19.01. MAI 19.01 acknowledges that the "direct result" language "might be misleading" when two or more causes of damage are involved, but offers the "directly caused or directly contributed to cause" language only as a discretionary substitution, to be used "at [the plaintiffs'] option." The Kamperts did not choose to use the modification, and Superior did not object. Apparently, neither the parties nor the trial court noticed the inconsistency in the language until the jury returned the note evidencing its confusion over the discrepancy.

Superior's brief acknowledges that the alternative language in MAI 19.01 is optional. However, the "directly caused or directly contributed to cause" language in the defendant's verdict directing instruction, MAI 32.01(3), is not. It will always be at odds with an instruction using "direct result." Therefore, to make the argument that the Kamperts are barred from arguing plain error in the combination of the instructions, Superior, in essence, is arguing that, when one of the causes of the damage is the plaintiff's (or, in wrongful death cases, the decedent's) own comparative fault, the plaintiff either *must* choose the alternative language, so that it is consistent with the language found in the defendant's comparative fault verdict directing instruction, or he bears the risk of jury confusion to his detriment.

This court's careful reading of all of the applicable MAI sections and the accompanying notes on use leads us to conclude that the Kamperts had no clear indication that the "direct result" language they chose to use in their verdict directing instruction was prohibited, even though they knew that Superior was alleging comparative fault. Examination of the applicable text could lead a plaintiff to believe that the optional modification in MAI 19.01 remains optional, even in comparative fault cases. And while it seems odd to find that two competing instructions, both of which are proper under the MAI, could combine to create "plain error" not attributable to either party, that is precisely what we face in this case. While we suggest that this would be an area ripe for alteration by the Missouri Supreme Court Committee on Jury Instructions, we do not find a basis on which to reverse the trial court's grant of the Kamperts' motion for new trial, especially considering the deferential standard of review.

### Conclusion

For the above-stated reasons, we affirm the judgment of the trial court.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.