Lavinia GOUDEAUX, Respondent,

v.

BOARD OF POLICE COMMISSION-
ERS OF KANSAS CITY, Missouri
and Damon Hawley, Appellants.

No. WD 75770.

Missouri Court of Appeals,
Western District.

Sept. 10, 2013.

Thomas R. Davis, Kansas City, MO, for respondent.

P. Benjamin Cox, Kansas City, MO, for appellants.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Kansas City Police Officer Damon Hawley ("Officer Hawley") and the Board of Police Commissioners of Kansas City, Missouri (the "Board") (collectively, the "Appellants") appeal from a personal injury judgment in favor of Lavinia Goudeaux ("Goudeaux") following a jury trial. Appellants argue that the trial court erred in denying their motion for remittitur, judgment notwithstanding the verdict, or new trial because (1) the jury should have been instructed on negligence instead of negligence *per se;* and in the alternative, (2) the jury's $618,000 verdict exceeded the amount of damages requested by Goudeaux during closing argument. We affirm.

## Factual and Procedural History [1]

■ On July 5, 2004,[2] Officer Hawley was traveling northbound in a police vehicle on Lydia Avenue near its intersection with 97th Terrace ("Intersection"). At the Intersection, Lydia Avenue has one northbound and one southbound lane. Officer Hawley was driving behind Goudeaux, and was pursuing a vehicle in front of Gou-

deaux. Officer Hawley had not activated his siren or overhead lights. Officer Hawley did have his "flashers" on. Officer Hawley drove in the left (southbound) lane to get around Goudeaux at the moment Goudeaux attempted to turn left onto 97th Terrace, causing a collision in the Intersection. Goudeaux suffered injuries to her neck, back, and left shoulder. Goudeaux received medical treatment over a period of four years, including multiple surgeries, physical therapy, and chiropractic care. Goudeaux incurred medical expenses of approximately $206,000.

Goudeaux filed suit against Officer Hawley, the Board, and the City of Kansas City (the "City").[3] In a first amended petition, Goudeaux alleged negligence and negligence *per se* against Officer Hawley. Goudeaux also alleged that the Board was liable pursuant to the doctrine of respondeat superior.[4] Appellants' answer asserted eleven affirmative defenses including comparative fault.

Goudeaux's case was tried to a jury. Goudeaux argued that Officer Hawley violated section 304.016.4[5] which prohibits driving in the left lane of travel within 100 feet of an intersection. The case was submitted to the jury on the theory of negligence *per se,* over Appellants' objection. The jury was also instructed at Appellants' request on the affirmative defense of comparative fault. The jury returned a verdict assessing the percentage of fault at

---

1. "The pertinent facts are viewed in the light most favorable to the jury's verdict." *Hayes v. Price,* 313 S.W.3d 645, 648 (Mo. banc 2010).

2. Although Goudeaux and the Appellants' briefing both refer to the accident as occurring on July 28, 2004, the record reflects that the accident occurred on July 5, 2004.

3. The City was dismissed without prejudice by Goudeaux prior to trial.

4. The heading for count two identifies the City and the Board as defendants, although, the City is not identified in the caption of the first amended petition or otherwise referenced in the allegations relating to count two, suggesting a typographical error.

5. All statutory references are to RSMo 2000 as supplemented as of the date of the accident in 2004, unless otherwise noted.

50% to Goudeaux and 50% to Appellants, and finding the total amount of Goudeaux's damages disregarding any fault on the part of Goudeaux to be $618,000. The trial court entered judgment in favor of Goudeaux and against Appellants in the amount of $309,000, reflecting a reduction of the jury's damage award by the fault assessed to Goudeaux.

Appellants filed their "motion for remittitur, or in the alternative, for judgment notwithstanding the verdict ("JNOV") or a new trial." They argued that (1) the evidence did not support the damages awarded by the jury, and only supported a total award of $309,000; and (2) negligence *per se* should not have been submitted because there was a dispute about whether Goudeaux had pulled over to the side of the road and stopped, and if she did, section 304.016.4 would not apply because section 304.016.1 required both vehicles to be *traveling* in the same direction. The trial court denied the post-trial motion.

Appellants timely filed this appeal.

### Point I

In their first point on appeal, Appellants argue that the trial court erred in denying their post-trial motion because the trial court should have submitted the case on a theory of negligence, and in submitting the case on theory of negligence *per se*, assumed that Officer Hawley's actions were negligent when that issue was in dispute. We disagree.

***Standard of Review***

■■■ "[W]hen a circuit court overrules a motion for . . . remittitur or, in the alternative, a motion for new trial, the proper appellate standard dictates that evidence will be considered in the light most favorable to the verdict." *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 39 (Mo. banc 2013). Here, the import of Appellants' claim relates to whether the jury was

properly instructed. Specifically, Appellants contend that the jury should have been instructed on negligence and not on negligence per se. "Whether a jury was instructed properly is a question of law this Court reviews *de novo*. Review is conducted in the light most favorable to the record and, if the instruction is supported by any theory, its submission is proper." *Hervey v. Mo. Dept. of Corrections*, 379 S.W.3d 156, 159 (Mo. banc 2012).

### Analysis

Goudeaux's case was submitted to the jury on a theory of negligence *per se*. Goudeaux claimed that Officer Hawley violated section 304.016.4 when he drove in the left lane of travel within 100 feet of the Intersection.

Section 304.016.4 provides:

4. ***No vehicle shall at any time be driven to the left side of the roadway*** under the following conditions:

(1) When approaching the crest of a grade or upon a curve of the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction;

(2) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, tunnel or ***when approaching within one hundred feet of or at any intersection*** or railroad grade crossing.

(Emphasis added.)

■■■ "Negligence *per se* arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Dibrill v. Normandy Assoc. Inc.*, 383 S.W.3d 77, 84 (Mo.App. E.D.2012). "When a case based on negligence *per se* is submitted to

the jury, the standard of care is omitted because the statutory violation itself constitutes a breach of the standard of care." *Burns v. Frontier II Props. Ltd. P'ship,* 106 S.W.3d 1, 4 (Mo.App. E.D.2003). In short, "[n]egligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." 57A AM. JUR.2d *Negligence* section 727 (1989). Thus, when a claim is submitted to a jury on the theory of negligence *per se,* the verdict director submits the predicate acts or omissions necessary to demonstrate a violation of the statute, and whether the plaintiff was injured as a result. *Vintila v. Drassen,* 52 S.W.3d 28, 37 (Mo.App. S.D.2001). However, the jury is not asked to determine whether those acts or omissions constituted negligence. *Id.*

 Here, the negligence *per se* verdict director submitted to the jury[6] required the jury to find as follows:

> In your verdict, you must assess a percentage of fault to the defendants Board of Police Commissioners of Kansas City, Missouri and Damon Hawley whether or not plaintiff was partly at fault if you believe:
>
> First, Damon Hawley drove on the left side of the roadway within 100 feet of or while traveling through the intersection of Lydia Avenue and 97th Terrace, and
>
> Second, as a direct result of such conduct, plaintiff sustained damage.
>
> In assessing any such percentage of fault against Board of Police Commissioners of Kansas City, Missouri and

Damon Hawley, you must consider them both as one party and assess only the fault of Damon Hawley as the fault of both.

The verdict director thus comported with the law in that it required the jury to determine that (i) Officer Hawley drove in the left lane of travel; (ii) within 100 feet of the Intersection; and (iii) that Goudeaux was damaged as a result.

Appellants do not contest that the evidence permitted the jury to draw the reasonable inference that Officer Hawley drove in the left lane of travel, and that he did so within 100 feet of the Intersection. Appellants nonetheless generally contend in their point relied on that negligence *per se* should not have been submitted to the jury because whether Officer Hawley's conduct constituted negligence was a matter in dispute.

As a preliminary observation, there is a logical breakdown in Appellants' point relied on that is plain. The argument fails to account for the fact that by its nature, the theory of negligence *per se* treats the conduct required or prohibited by a safety statute as the standard of care such that proof of a violation is presumptively negligent. See *Burns,* 106 S.W.3d at 3. Though a trial court, "in deciding whether a negligence *per se* instruction is proper, ... [must] make a threshold determination as to the sufficiency of the plaintiff's proof that a violation has occurred," here there is no dispute that there was sufficient evidence from which the jury could find that

---

6. The negligence *per se* instruction was tendered by the Appellants. Generally, "a party may not claim error based on an erroneous jury instruction that the party itself submitted to the court." *Bean v. Superior Bowen Asphalt Co., LLC,* 340 S.W.3d 275, 279 (Mo.App. W.D.2011). Though Appellants tendered the verdict director, they did so *after* the trial court overruled their objections to submission

of negligence *per se* and to address an error Appellants perceived in Goudeaux's tendered instruction. The parties thus agree that although Appellants are precluded from raising an objection to the *form* of the negligence *per se* verdict director, they are not precluded from raising claims of error that are otherwise properly preserved relating to the submissibility of negligence *per se.*

Officer Hawley drove in the left lane within 100 feet of the Intersection. *King v. Morgan,* 873 S.W.2d 272, 276 (Mo.App. W.D.1994). Thus, the trial court did not commit error in instructing the jury on negligence *per se* based on the general claim that Officer Hawley's negligence was in dispute.

In the argument portion of their Brief, Appellants lend specificity to the general assertion expressed in their point relied on. They urge that even though the jury could have found Officer Hawley in technical violation of section 304.016.4, it was nonetheless improper to submit on the theory of negligence *per se:* (1) because section 304.016.4 would have been rendered inapplicable had the jury accepted Officer Hawley's testimony that Goudeaux pulled over and stopped because section 304.016.1 [7] required both vehicles to be *traveling* in the same direction at the time of the accident; (2) because Officer Hawley was excused from violating section 304.016.4 by the operation of section 304.022.5, which applies to emergency vehicles after they activate lights and sound a siren as reasonably necessary; and (3) because the purpose of section 304.016.4, to avoid an accident with a vehicle entering an intersection from a cross street, is not served by applying the statute to the facts in this case.

■■■ We summarily dispense with Appellants' second and third complaints. Neither claim of error was raised in Appellants' post-trial motion. With respect to the submissibility of negligence *per se,* the only claim of error raised in the post-trial motion was Appellants' claim that Goudeaux pulled over and stopped her vehicle

negating applicability of section 304.016.4. Rule 72.01(b) permits a motion for JNOV to raise any basis for setting aside a verdict that was raised in a motion for directed verdict at trial. Rule 78.07(a) requires *all* allegations of error (except claims raised in a motion for JNOV) "to be included in a motion for new trial in order to be preserved for appellate review." The collective operation of these rules required Appellants to raise the second and third claims of error herein asserted in their post-trial motion.[8] Their failure to do so precludes review of the claims. *DeWalt v. Davidson Service/Air, Inc.,* 398 S.W.3d 491, 502 (Mo.App. E.D.2013) ("A party in a jury-tried case must include allegations of error in a motion for new trial in order to preserve them for our review, unless such allegations of error were included in a motion for judgment notwithstanding the verdict."); *Johnson v. Allstate Indem. Co.,* 278 S.W.3d 228, 233 (Mo.App. E.D.2009) (holding claim of insufficient evidence to find negligence not preserved for appeal where it was not raised as a specific ground in motion for directed verdict); *Lohsandt v. Burke,* 772 S.W.2d 759, 760 (Mo.App. W.D.1989) (holding that failure to raise issue with respect to voir dire in motion for new trial resulting in issue not being preserved for appeal).

■■■ Moreover, the second claim of error alleges that section 304.022.5 excuses Officer Hawley's violation of section 304.016.4. Section 304.022.5 provides, in pertinent part, that an emergency vehicle may disregard certain traffic regulations if the driver:

---

7. The Appellants' brief actually references section 306.016.1(1) instead of section 304.016.1(1). We presume this to be a typographical error.

8. The second and third claims of error herein raised were also not raised in Appellants' motion for directed verdict at trial, meaning they could not have been raised in the motion for JNOV. Rule 72.01(b).

while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light or blue light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle. Section 304.022.5(3). Section 304.022.5 thus affords an affirmative defense to a claimed violation of section 304.016.4. *Robison v. Cameron*, 118 S.W.3d 638, 643 (Mo.App. S.D.2003) (holding that "the operator of an emergency vehicle that violates the provisions of a traffic ordinance or statute has the burden of proving that it was operating within the terms of the statute excusing emergency vehicles from violations of the traffic control laws under certain circumstances"). "An affirmative defense seeks to defeat or avoid the plaintiff's cause of action, and avers that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged." *Mobley v. Baker*, 72 S.W.3d 251, 257 (Mo.App. W.D.2002). Affirmative defenses can be asserted to negate a claim of negligence *per se*. *See MacArthur v. Gendron*, 312 S.W.2d 146, 150 (Mo.App.1958) (holding "[u]nder the circumstances of a particular case there may be a valid excuse for failing to comply with a statutory rule of the road"); MAI 17.17 Notes on Use (6th ed.2002). In fact, in their answer to the first amended petition Appellants alleged section 304.022 as an affirmative defense:

Defendant Officer Hawley's alleged violations of traffic laws, and any negligence per se claim arising out of said violations, are excused and justified because he was operating as an emergency vehicle at the time of the occurrence in compliance with Section 304.022 RSMo.

■■■ Even assuming that the evidence supported the submission of an affirmative defense based on the application of section 304.022.5, Appellants never tendered a jury instruction for the defense. *Cluck v. Union Pacific Railroad Co.*, 367 S.W.3d 25, 34 (Mo. banc 2012) ("[I]t is the duty of an attorney for a party to aid the court in giving proper instructions which support that party's claim."). Rather, in stark contrast, Appellants formally *withdrew* the section 304.022.5 affirmative defense pursuant to a stipulation confirmed on the record at the beginning of trial.[9] Appellants cannot now argue instructional error based on an affirmative defense they withdrew or waived, and as to which they were obligated to tender a proposed jury instruction. *See Yeager v. Wittels*, 517 S.W.2d 457, 465–66 (Mo.App.1974) ("Failure to request [ ] an instruction [on an affirmative defense] constitutes an abandonment of that affirmative defense even though [the affirmative defense] is affirmatively pleaded."); *Hays v. Proctor*, 404 S.W.2d 756, 762 (Mo.App.1966) ("If [defendant] wanted his theory of the case presented for the jury's consideration it was his duty to submit such instructions.").

We are left to consider the remaining claim of instructional error raised in Ap-

9. The stipulation appears to have been a result of the fact that Appellants could not establish that Officer Hawley was operating as an "emergency vehicle" for purposes of section 304.022.5. Though Appellants stipulated that they would not seek to submit an affirmative defense excusing Officer Hawley's violation of section 304.016.4 because he was operating as an emergency vehicle in compli-

ance with section 304.022.5, Appellants preserved their right to put on evidence that Goudeaux violated section 304.022.1, which separately requires motorists to yield to emergency vehicles under certain circumstances. In fact, Goudeaux's purported violation of section 304.022.1 was effectively tendered to the jury in Instruction No. 8 as one of several disjunctive comparative fault submissions.

pellants' Brief. Appellants contend that negligence *per se* should not have been submitted because section 304.016.1 addresses passing on the left and requires both vehicles to be *traveling* in the same direction. Appellants argue that section 304.016.4 must be similarly read. Appellants thus argue that because there was testimony from Officer Hawley that Goudeaux had pulled over and stopped before he attempted to pass her vehicle, there was evidence that could have rendered section 304.016.4 inapplicable. We disagree.

Section 304.016.1(1) provides:

The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated ... The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle[.]

Appellants fail to cite any authority for their argument that section 304.016.1 operates to limit the scope of section 304.016.4. " 'Failure to cite relevant authority supporting [a] point or to explain the failure to do so preserves nothing for review.' " *Patterson v. Waterman*, 96 S.W.3d 177, 179 (Mo.App. S.D.2003) (citation omitted). In fact, Appellants' bare assertion that section 304.016.1 limits the scope of section 304.016.4 to drivers who are passing another vehicle traveling in the same direction is plainly contradicted by precedent.

In *Roach v. Lacho*, 402 S.W.2d 344, 348 (Mo.1966), our Supreme Court held:

[P]aragraph 4 [of section 304.016] is not limited by its terms to vehicles overtaking and passing other vehicles. Paragraphs 1, 2 and 3 of [section] 304.016 do apply specifically to overtaking and passing, but this is not true of paragraph 4. It makes no reference anywhere to overtaking and passing other vehicles, but starts out by saying that 'No vehicle shall at any time be driven ...' It then goes on to spell out several specific situations in which no vehicle is to be driven 'to the left side of the roadway.' [10]

The Supreme Court also held that:

The object of [the statute] was to eliminate the hazard of cars being operated on the left side of the roadways under certain conditions and the object of [section 304.016.4] was *to eliminate such hazard within 100 feet of intersections, and was for the benefit and protection of all persons and vehicles using the roadway at or near the intersection regardless of the direction they were traveling.*

*Id.* (emphasis added) (internal citations and quotation marks omitted). It is thus settled that section 304.016.4 is not limited in its scope to the act of passing, or to a requirement that vehicles are traveling in the same direction. As a result, it is immaterial whether Goudeaux pulled over and stopped before the collision, as that "fact" bore no relationship to whether Officer Hawley's complied with section 304.016.4.

We note as well that Appellants' claim of error is inconsistent with the verdict director. The verdict director Goudeaux

---

**10.** *See also State v. Powell*, 717 S.W.2d 548 (Mo.App. S.D.1986) ("Passing another vehicle is not an element of the offense under section 304.016.4(2);" "Obviously, a vehicle can pass another within one hundred feet of or at an intersection and not be in violation of section 304.016. It is an offense only if the defendant's vehicle is driven to the left side of the roadway.")

originally tendered, and which was rejected by the trial court based on Appellants' objection, posited that "Damon Hawley *attempted to pass* plaintiff's vehicle on the left." The verdict director tendered by Appellants, and submitted to the jury, accurately tracked the language of section 304.016.4 and posited that "Damon Hawley *drove on the left* side of the roadway." It is disingenuous for Appellants to complain on appeal that section 304.016.4 was intended to apply only to the act of passing when they objected to Goudeaux's offered verdict director because it referred to the act of passing.

■ Appellants' Reply Brief and oral argument urge a fourth claim of error regarding submission on the theory of negligence *per se.* Appellants claim that in *Robb v. Wallace,* 371 S.W.2d 232 (Mo. 1963), the Missouri Supreme Court held that a violation of section 304.016.4 is not negligence as a matter of law. This argument was not raised in Appellants' post-trial motion, was not raised in their motion for directed verdict at trial, and was not raised in their initial Brief. For several reasons, the argument is thus not preserved for our review. *DeWalt,* 398 S.W.3d at 502; *Johnson,* 278 S.W.3d at 233; *Lohsandt,* 772 S.W.2d at 760; *Coyne v. Coyne,* 17 S.W.3d 904, 906 (Mo.App. E.D.2000) ("Appellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument."). *Ex gratia,* however, we take this opportunity to clarify the confusion about the law of negligence *per se* revealed by Appellants' argument.

■ It is true that in *Robb* the Supreme Court held that "it may be summarily said that the passing of another vehicle at an intersection is not contributory negligence[11] as a matter of law *under any and all circumstances.*" 371 S.W.2d at 237 (emphasis added). Assuming it proper to extrapolate this holding to a finding of "negligence," as opposed to "contributory negligence," the holding does not mean, as Appellants urge, that negligence *per se* can never be submitted for a violation of section 304.016.4. Instead, the holding simply means that under some circumstances, a violation of the statute may be excused or justified. This is not a novel concept. As stated, violation of a safety statute creates a presumption of negligence. 57A AM. JUR.2d *Negligence* section 727 (1989). The question is how can the "presumption" be negated. The answer to that question is captured in the Notes on Use for the MAI for negligence *per se.* "Under the circumstances of a particular case *there may be a valid excuse for failing to comply* with a statutory rule of the road, as where nonobservance of the statute is induced by considerations of safety—or where compliance is impossible." MAI 17.17 Notes on Use (6th ed.2002) (quoting *MacArthur,* 312 S.W.2d at 150) (emphasis added).

■ Appellant's urge that contested evidence in this case called into question whether Officer Hawley was excused or justified in his conduct.[12] If true, that

---

11. *Robb* was decided prior to the Missouri Supreme Court's decision in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983) which abrogated contributory negligence as an affirmative defense in lieu of comparative fault in negligence cases.

12. There is some authority for the proposition that a common law defense to violation of a statute not itself grounded in statute, but nonetheless based on principles of justification or excuse, is recognized. See *Lincoln v. Ry. Express Agency, Inc.,* 359 S.W.2d 759, 765 (Mo.1962). However, availability of the defense in a case where an emergency vehicle

evidence would stand in contrast to the presumption that Officer Hawley's violation of section 304.016.4 was negligent. What Appellants fail to understand, however, is that evidence of excuse or justification does *not* negate the presumption of negligence as to affect the plaintiff's ability to submit on the theory of negligence *per se*. Rather, evidence suggesting a lawful excuse or justification permits the submission of an affirmative defense. See *Wheeler v. Phenix*, 335 S.W.3d 504, 512–13 (Mo. App. S.D.2011). "When a party is shown to have violated a duty or fixed standard created by statute or ordinance, a *prima facie* case of negligence or contributory negligence is made for the jury and that party must show legal justification or excuse for failure to comply with the statute or ordinance." *Robison*, 118 S.W.3d at 643. As previously noted, MAI 17.17 envisions the submission of the affirmative defense for excuse or justification, and offers the option of inclusion of an affirmative defense "tail."[13] MAI 17.17 Notes on Use (6th ed.2002). "It was incumbent upon Appellant[s] to submit a proper instruction establishing" the defense of excuse or justification. *Wheeler*, 335 S.W.3d at 513.

Appellants urge that although they could have asserted the affirmative defense of excuse or justification, they were not required to do so. That is true. However, their corollary assertion that evidence of excuse or justification required the court to submit on the theory of negligence and not on the theory of negligence *per se* is not supported by any authority, and is plainly inconsistent with the law herein cited.[14] Excuse or justification is an affirmative defense to negligence *per se*. Such evidence does not separately serve, however, to transform a submissible negligence *per se* claim into a negligence claim.

Point One is denied.

## Point II

In their second point on appeal, Appellants argue that the trial court erred in denying their motion for remittitur or in the alternative for JNOV or new trial because the evidence did not support a total verdict of $618,000 in light of the ceiling of damages established at trial. We disagree.

### Standard of Review

 "[W]hen a circuit court overrules a motion for . . . remittitur or, in the

---

has violated a traffic rule is viewed as subsumed within the statutory defense set forth in section 304.022. *Robison*, 118 S.W.3d at 643–44. Because the parties here apparently agreed that Officer Hawley was not operating an emergency vehicle as defined by section 304.022, it is plausible that Appellants could have submitted an affirmative defense based on common law principles of excuse or justification, if supported by the evidence.

**13.** An affirmative defense "tail" refers to a paragraph added to the end of a verdict director that "refers the jury directly from the verdict director to the affirmative [defense] instruction." *Wheeler*, 335 S.W.3d at 514.

**14.** Here, Appellants described their evidence of excuse or justification during oral argument, most of which related to *Goudeaux's*

conduct. Without resolving whether evidence of Goudeaux's conduct could have supported submission of the affirmative defense of excuse or justification, we observe that Appellants effectively submitted this evidence to the jury through their comparative fault instruction. The jury ascribed 50% fault to Goudeaux as a result. Though not raised by Goudeaux with the trial court, or as an issue on cross appeal, we observe that the comparative fault instruction employed the word "negligence" to define Goudeaux's conduct, but erroneously failed to define the term. See *Wheeler*, 335 S.W.3d at 513–514 (holding that refused instruction which sought to submit an affirmative converse establishing the defendant's excuse or justification would have been erroneous as it failed to define "negligence").

alternative, a motion for new trial, the proper appellate standard dictates that evidence will be considered in the light most favorable to the verdict." *Badahman*, 395 S.W.3d at 39. Here, the import of Appellants' claim is that the evidence did not support the jury's damage award requiring remittitur of the award. "Broad discretion is given to the jury in determining a party's injury." *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13, 36 (Mo.App. E.D. 2013). However, pursuant to section 537.068, " '[a] court may enter a remittitur order if . . . the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages.' " *Id.* "We review a trial court's decision on remittitur for an abuse of discretion." *Id.*

> Our review is limited to evidence supporting the verdict, and we will exclude any contrary evidence. Moreover, ***when the trial court approves a jury's verdict, its discretion is practically conclusive.*** Since the appellate court does not weigh the evidence, it is limited to inquiring whether the jury's verdict is supported by substantial evidence.

*Id.* (emphasis added) (internal citations and quotation marks omitted).

### Analysis

Though Appellants' second point is broadly framed as whether the "evidence" supported the jury's damage award, the argument portion of the Brief reveals that Appellants' complaint is actually much narrower.[15] Appellants contend that Goudeaux judicially admitted the maximum

amount of damages the jury could award during closing argument.

■■■■■ "A statement by counsel made during trial is a binding judicial admission if, and only if, the statement constitutes a clear, unequivocal admission of fact." *Norfolk S. Ry. Co. v. Crown Power & Equip., L.L.C.*, 385 S.W.3d 445, 453 (Mo. App. W.D.2012), *overruled on other grounds by Badahman*, 395 S.W.3d at 40.

> A judicial admission has been defined as a more or less formal act done during a judicial proceeding which waives or dispenses with the production of evidence and concedes for litigation purposes that a certain proposition is true. Or, as Wigmore says, a judicial admission 'is, in truth, a substitute for evidence, in that it does away with the need for evidence.'

*Chilton v. Gorden*, 952 S.W.2d 773, 777 (Mo.App. S.D.1997) (quoting 9 Wigmore, Evidence section 2588 (Chadbourn rev. 1981)) (citations and quotation marks omitted). "A statement made during counsel's opening or closing statements may constitute a judicial admission if it is unequivocal. A judicial admission must be clear and unqualified." *Id.* at 778 (citation omitted).

Appellants claim that Goudeaux's discussion of damages during closing argument constituted a judicial admission about the maximum amount she should be awarded. We presume Appellants are referring to the following comments by Goudeaux's trial counsel:[16]

> Now is the time that you have to serve in the interest of justice, which this process is all about. This is your opportunity to do that. It is her only opportunity to get justice in this case.

---

15. Appellants do not argue that there was insufficient evidence to support the jury's award. They argue only that the award exceeded the ceiling established by Goudeaux's alleged judicial admission.

16. Appellants do not identify which statements made during closing argument rose to the level of a judicial admission, and refer only generally to a page in the transcript.

So what are the damages that she suffered as a result of this? What harms and losses does the evidence establish that she has?

The medical bills are in evidence, Exhibit 149, unrebutted, unrefuted, the medical bills in this case, $206,000.06.

Now some of you may say, "Well, that's all we believe she should receive." But just doing that wouldn't be full justice in this case. It would be half justice. And half justice is no justice.

These injuries and the treatment, surgeries, going under general anesthetic, dealing with all those risks, she did all of that. She had to with that. It affected her mobility for a considerable period of time, her ability to move around. It affected her ability to sleep. It affected how she felt about herself. That's real.

I submit to you that for the resulting damages, that would be appropriate. ([Plaintiff's counsel] writes an amount on chart on easel).

I submit to you, ladies and gentlemen, that *justice in this case would be served with a verdict in that amount,* based on the evidence as you heard it. And *we'll be requesting a verdict in that amount.* Thank you very much.
(Emphasis added.)

The trial transcript does not reflect the amount written on the chart by Goudeaux's counsel. Appellants claim in their Brief that the amount written on the chart was $309,000, arrived at by adding $103,000 to the medical bills. However, Appellants have not supported this assertion by *any* citation to the record. We are not inclined to treat Appellants' point as preserved for review. Appellants failed to take action during trial to insure that the amount Goudeaux purportedly admitted as her damage "cap" was reflected in the record. *See Fireman's Fund Insurance Co. v. Brouk–Ziegler Motor Co.,* 841 S.W.2d 778, 780 (Mo.App. E.D.1992) ("[I]t is the responsibility of the moving party to make sure that any evidence offered is preserved in an approved manner and transcribed for the use of the appellate court."); *Tessmer v. Tessmer,* 611 S.W.2d 299, 300 (Mo.App. E.D.1980) ("The parties have a duty to preserve and present the record on appeal" where record did not reveal any attempt by husband to make or preserve a record of a pre-trial motion.)

■ Even if we accept Appellants' assertion as true,[17] we do not believe Goudeaux's closing argument about an award that would "serve justice" constitutes a clear, unqualified, or unequivocal judicial admission that Goudeaux should be awarded no more than the sum of $309,000. To the contrary, Goudeaux's closing argument appears to be nothing more than a suggestion—and if anything, an urged floor-for the jury's damage award.

The instant case is similar to the circumstances presented in *State ex rel. Mo. Highway and Transp. Comm'n v. Union Terminal Ry. Co.,* 633 S.W.2d 429, 431 (Mo.App. W.D.1982). In closing argument in a condemnation action, the State urged the jury to award the sum of $37,600 because "I think (Mr. Fern's) damages are accurate" and "I think $37,600 is all the state should have to expend for that, and I hope you agree with me." *Id.* This court rejected the contention that these statements constituted a judicial admission binding on the State. *Id.* We held that the "comments here were not clear and un-

---

**17.** Goudeaux's Brief does not concede the amount written on the chart during closing argument, and thus does not concede the accuracy of Appellants' assertion on appeal. Our *independent* review of the record reveals, however, that in response to Appellants' post-trial motion, Goudeaux did not contest that the total amount written on the chart during closing argument was $309,000, and in fact, appears to have admitted same.

equivocal admissions that the state owed appellant $37,600, nor did they 'concede the truth of some alleged fact.'" *Id.* (citation omitted). "On the contrary, [the State's] remarks were no more than mere requests to the jury. [The] imploration that the jury agree with him indicated his recognition that the jurors were still the final arbitrers of the facts." *Id.* "Moreover, MAI 2.01, given by the court, tells the juror that closing argument is not evidence and 2.02 reminds the jurors that they are the fact finders." *Id.*

Similarly, Goudeaux's argument to the jury, regardless of the amount written on the chart, was nothing more than a request for a suggested award that would "serve justice." The argument urged what was "fair," and did not concede facts. This case is not unlike the legion of cases where a plaintiff suggests a damage award in a personal injury case during closing only to receive a higher award from the jury. *See, e.g., Foster v. Catalina Industries, Inc.*, 55 S.W.3d 385, 391 (Mo.App. S.D. 2001) (plaintiff in wrongful death case suggested that the jury award $10,000,000 and jury actually awarded $15,000,000); *Lewis v. Envirotech Corp.*, 674 S.W.2d 105, 113 (Mo.App. E.D.1984) (where plaintiff suggested a compensatory damage award of $425,000, jury awarded $850,000, and trial court remitted award to $715,000). The strategic "suggestion" of an award during closing is particularly likely in cases where the damages sought inherently involve an element of subjective calculation, as is the case with pain and suffering. *See McCormack v. Capital Elec. Const. Co., Inc.* 159 S.W.3d 387, 395 (Mo.App. W.D.2004) ("Compensatory damages may also be based on intangibles that cannot be easily calculated, such as past and future pain, suffering, effect on lifestyle, and embarrassment.").

Here, the jury was instructed that during closing arguments, the lawyers could "suggest conclusions that may be drawn from the evidence." [Instruction No. 1]. The jury was also instructed to "determine the total amount of plaintiff's damages to be such sum as will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained and is reasonably certain to sustain in the future as a direct result of the automobile collision mentioned in the evidence." [Instruction No. 10]. Under these circumstances, Goudeaux's suggested award was not a judicial admission that capped the jury's ability to exercise its discretion in calculating the award it believed to be fair and just.

Appellants rely on this court's holding in *Norfolk*, 385 S.W.3d at 453–54, where we held that because the defendant conceded certain component damage amounts, an award below those amounts was arbitrary and could not stand. Norfolk is factually distinguishable.

*Norfolk* involved the collision of a train with a trailer that was stuck on the tracks. *Id.* at 450. Norfolk sustained significant property and economic damages. *Id.* Norfolk sued Crown Power and Equipment, L.L.C., the employer of the trailer driver. *Id.* Crown stated in its opening statement that:

Some of the damages there's no dispute about. You know, the cost of the destroyed automobiles that had to be salvaged, we're not disputing that. We're not disputing the repair cost to some of the engines, but there is a lot of this damage, about 4 million dollars' worth, that I think the evidence will show that [Norfolk's expert] just pulled it out of the air.

. . . .

So I'm not going to have a lot to say about damages because I think the real issue in this case is liability, responsibility, who's responsible, and I believe the evidence will be it's Norfolk Southern.

*Id.* at 451. In Crown's closing argument, it similarly stated:

> I told you in my opening statement, some of the damages don't even really dispute. Don't dispute the 1.8 million dollars on the bill of lading. Don't dispute the cleanup costs from the derailment. Don't .dispute the autorack cars that were destroyed and their depreciated value, but there are some of the damages that I do dispute. The 2 million dollars of loss of revenue on the engines, the 400 or 500,000 dollars for the loss of revenue on these autorack cars, the overhead-ladies and gentlemen, I do dispute that.
>
> . . . .
>
> I would say 50 percent of the damages in this case ... is fluff, and I would urge you to use your common sense when you go back to the jury room.

*Id.* Norfolk argued its total damages amounted to either $7,248,467.83 or $7,004,567.83. *Id.* The jury found the total damages sustained by Norfolk disregarding fault to be $1,709,114.55. *Id.* On appeal, Norfolk claimed that the trial court erred in denying its motion for additur or, in the alternative, for a new trial as to damages only because Crown judicially admitted that Norfolk's damages exceeded the amount found by the jury. *Id.* at 453. This court agreed noting that "Crown did not dispute that Norfolk was damaged in an amount far exceeding $1,709,114.55, the jury's finding of total damages." *Id.* We held that statements made by Crown in both its opening and closing statements were "clear and unequivocal, and, as such, they had the effect of judicially admitting that Norfolk was damaged in an amount

that exceeds (by a great margin) the jury's finding of $1,709,114.55." *Id.* The clear and unqualified statements made by Crown's counsel in *Norfolk* are readily distinguishable from Goudeaux's general request that "justice be served," and by the commensurate suggestion that justice would be served with a total damage award of $309,000.

Point Two is denied.[18]

### Conclusion

We affirm the trial court's judgment. The trial court did not err in denying Appellants' motion for remittitur, or for JNOV or in the alternative for new trial.

All concur.

---

**18.** In the argument portion of their Brief, Appellants summarily claim that "[t]he jury arbitrarily doubled the amount of the award upon realization that fifty percent of the fault would be apportioned." Not only is this argument not preserved because it exceeds the scope of the point relied on, (Rule 84.04(e)), it is also not preserved because " '[a] contention that is not supported with argument beyond conclusions is considered abandoned.' " *Willis v. Mo. Farm Bureau Services, Inc.* 396 S.W.3d 451, 454 (Mo.App. W.D.2013) (citation omitted).